```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION
```

Lawrence M. Tobias,              :

      Plaintiff,               :

   v.                            :        Case No.  2:14-cv-1751

                                          :        JUDGE ALGENON L. MARBLEY
Commissioner of Social Security,          Magistrate Judge Kemp

      Defendant.               :

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Lawrence M. Tobias, filed this action seeking review of a decision of the Commissioner of Social Security partially denying his applications for social security disability benefits and supplemental security income.  Those applications were filed on May 29, 2012, and alleged that Plaintiff became disabled on December 31, 2003.

After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on January 29, 2014.  In a decision dated March 12, 2014, the ALJ rendered a partially favorable decision.  That became the Commissioner's final decision on August 2, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on December 5, 2014.  Plaintiff filed his statement of specific errors on January 26, 2015, to which the Commissioner responded on May 8, 2015.  Plaintiff filed a reply brief on May 22, 2015, and the case is now ready to decide.

### II. The Lay Testimony at the Administrative Hearing

Plaintiff, who was 55 years old at the time of the administrative hearings and who has a GED plus some college education, testified as follows.  His testimony appears at pages

36-48 of the administrative record.

Plaintiff first testified that he had not worked since 2007. His last job was as a subcontractor doing computer work. He had also been a copy machine repairman and had delivered pizzas, and once worked as a banquet chef.

According to Plaintiff, he could not work due to pain and depression. He also described numbness in his left leg from his foot to his hip. He walked with a cane, prescribed by a doctor, and also wore a back brace. Sitting for more than fifteen minutes at a time was difficult. He could climb steps slowly.

Plaintiff was able to socialize with family and friends but did not like crowds and did not get out much. He did not do housework or yard work. He was on a number of medications including oxycodone, Valium, Lyrica, Wellbutrin, Topamax, and Neurontin. The oxycodone helped him move around. He also said sleeping was difficult and he did not sleep during the day even though he got only about four hours of sleep at night.

During his last job, Plaintiff worked only four hours at a time. He said that physically he felt horrible, and that he suffered from migraines, which had begun about ten years before. He had three or four of those in a typical week. Lastly, he said that he had discussed surgical options with his doctors and had gotten various opinions about the need or usefulness of surgery.

### III. The Medical and Educational Records

The medical records in this case are found beginning on page 237 of the administrative record. The pertinent records can be summarized as follows.

In 2008, an MRI of Plaintiff's back showed a moderate central disk bulge at L4-5 and minimal multilevel disk bulging with multilevel foraminal encroachment throughout the lower lumbar spine. An x-ray of the cervical spine done in 2010 showed some mild changes as well. An MRI of the same area done the

following year showed some straightening of the normal cervical lordosis and some loss of disk space height at C5 through C7. There was also disk herniation at C5-6 and a bulge at C6-7. When examined by Dr. Knierim, a neurosurgeon, in 2011, Plaintiff could heel and toe walk only with difficulty and straight leg raising was positive at 45 degrees bilaterally. Cervical traction, Valium, and a soft collar were prescribed. (Tr. 241-49).

    Office notes from Dr. Harvey showed that, from 2010 to 2012, Plaintiff was reporting severe discomfort in his low back (aggravated by recent epidural injections) but no numbness or tingling. He was sleeping and eating fairly well. He also mentioned, during one visit, leg pain as well. The diagnoses included severe lumbar pain syndrome and depression. Plaintiff reported a 20-year history of back pain which was present all the time and which affected his mental status. (Tr. 253-60). Dr. Harvey also completed a form on which he described Plaintiff as being able to stand for 15-20 minutes at a time, walk for 20-30 minutes at a time, sit for 15-20 minutes at a time, rarely lift up to ten pounds (and not in a work setting), unable to push and pull, and unable to look upwards for any length of time. (Tr. 463-64). He also wrote a letter explaining that the symptoms were probably present for at least five years prior to Plaintiff's first visit. (Tr. 466).

    On June 18, 2012, Dr. Chang, who had also been treating Plaintiff for back problems since 2010, responded to a questionnaire by indicating that Plaintiff suffered from chronic low back pain and leg pain due to the conditions shown on the MRI. He had limited range of motion in his spine and walked with a slight antalgic gait. (Tr. 279-80). Dr. Chang also attached notes showing that during his course of treatment, Plaintiff reported persistent lower back ache with pain radiating into his hips and intermittently down to his left foot. In 2012, he was

taking oxycodone and Neurontin; before that, he had been taking Percocet and using a Duragesic patch.  Examination typically revealed weakness and numbness in the lower extremities as well as some occasional hand numbness.  Medications temporarily reduced the pain. (Tr. 281-348).  Dr. Chang, too, expressed an opinion about Plaintiff's functional capacity, stating that Plaintiff had difficulty walking for prolonged periods of time and used a cane to assist in walking.  He also was unable to stand for prolonged periods of time.  (Tr. 394-95).

State agency physicians also expressed opinions about Plaintiff's physical functional capacity.  Dr. McKee thought Plaintiff could do a range of light work with some restrictions, based on a diagnosis of degenerative disc disease, and also said that he should avoid even moderate exposure to hazards such as machinery and heights.  (Tr. 67-68).  Dr. Villanueva concurred. (Tr. 95-97).

### IV.   The Vocational Testimony

George Coleman III was the vocational expert in this case. His testimony begins at page 48 of the administrative record.

Mr. Coleman was told that Plaintiff's past relevant work consisted of copy machine repairer and banquet cook helper.  He testified that the former job is light and skilled, and the latter is medium and unskilled.

Mr. Coleman was then asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertional level and who could occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl.  The person could never climb ladders, ropes, or scaffolds and had to avoid even moderate exposure to hazards such as unprotected machines and unprotected heights.  Also, the person was limited to the performance of simple, routine, repetitive tasks with no strict time or

production demands and with only occasional and superficial contact with supervisors, coworkers, and the general public. Also, the work environment had to be relatively static with static work processes and procedures. In response, he said that such a person could not do Plaintiff's past relevant work. However, Mr. Coleman identified a number of jobs such a person could do, including hotel or motel housekeeper, office helper or clerical assistant, and router or routing clerk.

Mr. Coleman was next asked about someone who was limted to sedentary strength work but also would have to change positions frequently, being able to stand only 20 minutes at a time, walk 30 minutes at a time, and sit 20 minutes at a time. The person could not use the upper extremities to push and pull and could not operate bilateral foot controls, nor could he or she crawl more than frequently or bend, squat, or climb steps more than occasionally. Additionally, the person had the psychological limitations described in the first hypothetical and would also miss five or more days of work per month. He said that such a person could not hold competitive employment.

Finally, the ALJ asked Mr. Coleman about someone who was limited as described in the first hypothetical but who needed a cane to walk. He testified that no light jobs would be available. Mr. Coleman also gave numbers for the jobs he identified in the regional and national economies, and he said his testimony was consistent with the <u>Dictionary of Occupational Titles</u>.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 14-26 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act

through March 31, 2008. Next, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 31, 2003. Going to the second step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including degenerative disc disease of the cervical and lumbar spine, migraines, depression, and anxiety. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

    Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level and with certain restrictions. He could occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl; he could never climb ladders, ropes, or scaffolds and had to avoid even moderate exposure to hazards such as unprotected machines and unprotected heights; and he was limited to the performance of simple, routine, repetitive tasks with no strict time or production demands and with only occasional and superficial contact with supervisors, coworkers, and the general public, performed in a work environment which was relatively static with static work processes and procedures. The ALJ found that Plaintiff could not do his past relevant work. However, the ALJ determined that prior to January 28, 2014, Plaintiff could do certain jobs identified by the vocational expert including hotel or motel housekeeper, office helper or clerical assistant, and router or routing clerk. The ALJ further found that such jobs existed in significant numbers in the local and national economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits prior to January 28, 2014. However, because Plaintiff changed age categories on that date, moving to the advanced age category, he could no longer perform substantial

gainful employment after that date, and he was awarded SSI benefits from that date forward.

### VI. Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ did not properly evaluate the treating source opinions from Drs. Harvey and Chang; and (2) the case should be remanded for consideration of new and material evidence. The first issue is evaluated under the following legal standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

A. <u>Treating Source Opinions</u>

Plaintiff first argues that the ALJ violated the "treating physician" rule by improperly, and without adequate explanation, giving only little weight to the opinions of Dr. Harvey and Dr. Chang, both of whom had treated Plaintiff for his back ailment for several years.  The Commissioner contends that the ALJ's decision not to afford controlling weight to these opinions was sufficiently specific, and sufficiently supported by the evidence, to pass muster under the controlling regulation and case law.  As usual, the Court begins its analysis of this issue by describing the ALJ's rationale for declining to accept the treating source opinions.

First, as to Dr. Chang's opinion (which, as noted above, consisted of the statement that Plaintiff had difficulty walking for prolonged periods of time, used a cane to assist in walking, and was unable to stand for prolonged periods of time), the ALJ assigned it little weight because Dr. Chang "did not quantify what he believed to be long periods of time and further, did not offer a clear indication about what the claimant could do despite his impairments."  (Tr. 22).  The ALJ also said that Dr. Chang "did not provide a sufficient narrative to support these vague limits."  <u>Id</u>.  He offered no other basis for rejecting Dr. Chang's views, but did, later in the decision, give great weight to the state agency physicians' opinions as to physical functional capacity, noting that these physicians were board-certified and familiar with Social Security regulations, and that "[t]heir opinion is generally derived from and consistent with the medical evidence of record."  (Tr. 23).

On the subject of Dr. Harvey's opinion, the ALJ dealt separately with the opinion relating to Plaintiff's functional capacity and the opinion about how long the restrictions found by Dr. Harvey had been present.  As to the former, the ALJ said that

it was "incomplete and not supported by [Dr. Harvey's] own treatment records or the totality of the evidence." The ALJ specifically addressed only one part of the opinion, in which Dr. Harvey said Plaintiff would miss more than five days of work per month, stating that it was "projective and not even moderately supported by the evidence of record." (Tr. 22). The ALJ also discussed Dr. Harvey's opinion as to the length of time Plaintiff had been so limited by noting that Dr. Harvey did not even know Plaintiff during the five years in question. In comments which, if the administrative decision is read fairly, appear to address both aspects of Dr. Harvey's opinion, the ALJ also said that Dr. Harvey did "not provide sufficient clinical and laboratory data to support his conclusion," did "not provide a detailed function-by-function analysis that demonstrates the inability to perform any type of gainful activity," and "addresse[d] an area that is specifically reserved to the Commissioner under Social Security Ruling 96-5p." Id.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the

weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. <u>Wilson v. Comm'r of Social Security</u>, 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ's rationale for rejecting both treating source opinions is little more than boilerplate repetition of the factors set forth in 20 C.F.R. §404.1527(c).  A treating source opinion may, of course, be given less than controlling weight if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and if it is "inconsistent with the other substantial evidence in [the] case record," <u>see id</u>., but an ALJ may not just assert those defects without explaining why they exist.  What is the problem with the clinical and laboratory evidence?  What other substantial evidence is the doctor's opinion not consistent with?  The ALJ does not say.

The type of wholly conclusory and generalized statements used by the ALJ in this case have consistently been deemed to be inadequate explanations under the "treating physician" rule.  As this Court explained in <u>Hardy v. Comm'r of Social Security</u>, 2013 WL 4546508, *5 (S.D. Ohio Aug.28, 2013), <u>adopted and affirmed</u> 2014 WL 1091718 (S.D. Ohio March 18, 2014),

> One of the reasons why an ALJ must articulate the basis of his or her rejection of a treating source's opinion is to allow the reviewing Court to determine if the rejection is properly based upon the evidence of record. <u>See Wilson, supra</u>;<u> see also Bowen v. Comm'r of Social Security</u>, 478 F.3d 742, 749 (6th Cir. 2007) ("the goals of § 1527(d)(2) cannot be satisfied by bald speculation"). As the Court of Appeals has observed, "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end

-10-

> of the stick." Friend v. Comm'r of Social Security, 375 Fed. Appx. 543, 552 (6th Cir. Apr.28, 2010). See also Blackburn v. Colvin, 2013 WL 3967282, *7 (N.D. Ohio July 21, 2013) (finding the ALJ's articulation of this factor inadequate because "[w]hile the ALJ concluded that the treating physician's opinions were inconsistent with the medical evidence, he does not offer any explanation for his conclusion"). The same is true here; ... there is absolutely nothing in the ALJ's decision which would allow either the plaintiff or this Court to determine what part of the medical record the ALJ found to be inconsistent with [the treating source]'s opinions.

Apart from this "articulation error," there are other problems with the ALJ's discussion of the treating source evidence. The ALJ appears to suggest that a treating source's opinion can be discounted if the physician's opinion is limited to what a claimant cannot do, as opposed to addressing what he or she is able to do. Nothing in §404.1527(c) suggests that this is a proper consideration. Further, Dr. Harvey did explain what he thought Plaintiff was capable of doing in terms of sitting, walking, standing, and lifting, all of which are relevant considerations. Also, the ALJ did not explain why he viewed Dr. Harvey's opinion as "incomplete" or why that entitled the ALJ to disregard those opinions which Dr. Harvey did express. Further, neither Dr. Harvey nor Dr. Chang used the term "disabled" in his opinion or expressed a view about disability which was divorced from an assessment of Plaintiff's physical capabilities, so the ALJ's citation to SSR 96-5p is irrelevant. Finally, as Plaintiff points out, although Dr. Chang's opinion may not have been expressed precisely in terms of how long he thought Plaintiff could stand or walk, his conclusion that prolonged standing and walking were beyond Plaintiff's capabilities is clearly different from both the state agency reviewers' conclusion - which included the statement that Plaintiff could walk or stand for six hours at a time - and the ALJ's residual functional capacity finding.

Simply dismissing that opinion as "vague" does not account for the fact that it is a treating source opinion, based on years of treatment, and that it had to be accounted for using the various factors set out in §404.1527(c).

Clearly, a remand for further examination and evaluation of both treating source opinions is needed, since both would support the onset of disability at a date earlier than the date the ALJ selected.  There is a separate issue about whether Plaintiff may have been disabled prior to expiration of his insured status.  The Court declines to comment on the ALJ's treatment of that issue; that is a matter which can also be further revisited on remand.

### B.  Sentence Six Remand

Plaintiff's other argument is that the case should be remanded under 42 U.S.C. §405(g), sentence six, to consider a new report from a licensed social worker, Melissa Johnson.  A remand under sentence four will give the ALJ a full opportunity to consider this evidence.  As a result, the sentence six request would be moot.  See Fowler v. Comm'r of Social Security, 2015 WL 5579841, *5 (S.D. Ohio Sept. 23,2015)("When the Court decides to remand a case under 42 U.S.C. § 405(g), sentence four, that determination ordinarily moots a request for a sentence six remand").

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection

is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp  
United States Magistrate Judge